568 A.2d 590

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jerome MARSHALL, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1987.

Reargued April 10, 1989.

Decided Dec. 22, 1989.

558

560

Michael J. McAllister, New York City, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Hugh J. Burns, Jr., Asst. Dist. Atty., Robert A. Graci, Chief, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

These are the direct appeals from three convictions of murder of the first degree, involving two death sentences and one life sentence of Jerome Marshall (Appellant), pursuant to 42 Pa.C.S. Section 9711(h)(1) [1]. Appellant was arrested on November 9, 1983, and charged with criminal homicide for the deaths of Myndie McKoy, Sharon Saunders, and her two-year-old daughter, Karima Saunders. Their nude bodies were found under a mattress in one of the bedrooms of their apartment by Sharon's mother and brother. The discovery was made on January 25, 1983. The bodies were found with cords tied around their necks, indicating that they had been strangled until dead.

Appellant was tried to a jury with the Honorable Francis A. Biunno of the Court of Common Pleas of Philadelphia presiding and, on August 29, 1984, the jury returned its verdicts of murder of the first degree as to each victim. A separate sentencing hearing was immediately held, following which the same jury determined that Appellant be sentenced to death on the murders of Karima Saunders and Myndie McKoy, and that Appellant be sentenced to life imprisonment for the murder of Sharon Saunders. Post-trial motions were considered and denied, triggering these automatic appeals.

Appellant first argues that insufficient evidence exists to support the convictions of murder of the first degree.[2] Our independent review of the entire record, giving all reasonable inferences to the Commonwealth as verdict winner, discloses sufficient evidence to support the convictions of murder of the first degree for each of Appellant's

1. 42 Pa.C.S. § 9711(h)(1) provides:
   (h) Review of death sentence.—
   (1) A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.

2. The Crimes Code defines murder of the first degree as:
   "[a] criminal homicide ... committed by an intentional," i.e., "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a), (d).

victims based upon the following facts which we have gleaned from the record.

On January 25, 1983, James Burley, the brother of Sharon Saunders, in the company of his mother, went to the victims' apartment in the City of Philadelphia. Upon entering the apartment, James noticed that it was very hot in the apartment and that a foul odor permeated the air. Upon searching, he found the bodies of his sister, niece, and Myndie McKoy, under a mattress in one of the bedrooms. James also noticed that Sharon's stereo and speakers were missing. Upon viewing this grizzly scene, James and his mother contacted the police, who immediately responded to the call and conducted an investigation.

Among the items recovered during this investigation was a manilla envelope containing Appellant's name and address and documents indicating the time and place where Appellant was scheduled to pick up his welfare check. On the front of the envelope was inscribed the following "Jerome and Sharon 4 ever".

Armed with this information, the police conducted a search for Appellant by going to his listed address and waiting for him at the bank and by visiting his parents and aunts and uncles. As part of the search for Appellant, they went to his brother's home where the police saw the stereo and speakers that James Burley had described as belonging to his sister Sharon. The police obtained a search warrant for these items and returned to Eugene and Irene Marshall's home and seized the stereo and speakers. Irene admitted that Appellant brought these items into her home and that he sold them to Eugene. Eugene told the police that he found his brother on a corner very near to where the victims lived near their time of death, carrying a knife and that he had blood on his shirt. He also told the police that he harbored Appellant in his home for a few days and knew that Appellant returned to the victims' apartment following the murders to retrieve some of his belongings and the stereo, which he sold to Eugene. Finally, Eugene

564

told the police that his brother had confided to him that he had, in fact, killed the women.

The post-mortem examination of the victims indicated that they were all strangled to death and that the time of death was from one and one-half to five and one-half days from their discovery on January 25, 1983. Myndie McKoy's corpse also revealed that she had been stabbed in the back, which wound was listed as a contributing factor to her death.

Based upon this information, a warrant for the arrest of Appellant was obtained and, following an extensive search for Appellant, he was finally apprehended on November 10, 1983, and brought to the Norristown Police Station. After some preliminary interrogation and the administration of the *Miranda* warnings, Appellant decided to waive those rights and give a statement which proved to be a confession.

Appellant recounted that he and Sharon had been lovers and that when she told him she was to marry another he became enraged. On the day of the murders, he had sex with the twenty year old Sharon, and while she slept, he put a clothes line around her neck and strangled her to death. He then went into Myndie McKoy's room to tie her up. When she awoke and began to scream, he found a knife and stabbed her in order to quiet her and tied her up. He then dragged her into the bathroom and filled the tub up with water. She pleaded with him to leave her alone and she promised not to tell anyone and again began to scream, and then Appellant plunged Myndie's head under the water in the tub and held it there until Myndie no longer moved. Having permanently silenced Myndie, he dragged her body into Sharon's bedroom and laid her corpse next to Sharon. Appellant also admitted that he killed Sharon's two-year-old baby, Karima, by strangulation and drowning because the baby was awakened by the commotion and called out for her mother. When little Karima was dead, Appellant put her between the bodies of Sharon and Myndie and covered their bodies with a mattress.

When he left the premises, he ran into his brother and then went to his brother's home where he changed his bloody shirt and stayed for a few days. He went back to the apartment to retrieve some of his belongings and took the stereo and speakers. He stated that he sold these items to Eugene and then left town because he knew that the Philadelphia police were looking for him.

Taking all of these circumstances together, a jury could conclude beyond a reasonable doubt that Sharon, Karima and Myndie died as the result of a homicide. From the nature of the injuries, the jury could infer that the killings were intentional and malicious. From the manner of the killings, the jury could conclude that the killings were premeditated and the jury could conclude that Appellant committed the crimes, from his own testimony as well as the circumstantial evidence linking him with the crimes. Accordingly, we are more than satisfied that sufficient evidence exists in this record to support the jury's verdicts of murder of the first degree and dismiss Appellant's sufficiency challenge.

## PRE–TRIAL ERRORS

Appellant charges that the suppression court was in error in not suppressing his confession as being the result of police coercion. He argues that he was psychologically coerced into making a confession when the police showed him a photograph of the victims under the mattress.

Aside from making this bald allegation, Appellant does not demonstrate how the showing of the photograph perverted the voluntariness of his statement or that his waiver of his constitutional rights became unknowing or unintelligent. See *Commonwealth v. Culberson*, 467 Pa. 424, 358 A.2d 416 (1976). More recently, in *Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689 (1986), we rejected a similar assertion by a defendant who, after being shown pictures of the victim's body, exclaimed, "I did it, I did it."

At the most, Appellant would have us believe that he was so shocked when shown the picture of the victims, that it unleashed an involuntary flood of inculpatory statements which would not otherwise have been made. The police, however, contradicted Appellant and testified that he was alert and responsive during the interrogation and that Appellant agreed to be interviewed before seeing any photographs. Appellant decided to make his confession after he was shown his brother's statement in which he told his brother that he had killed the women. After making his statement, Appellant signed each page of the confession and specifically answered that he was making his statement of his own free will, without force or fear, and without threats or promises having been made to him.

■ When faced with such a conflict of testimony, we defer to the suppression court, which, as fact finder, passes upon the credibility of witnesses, and its findings are not disturbed when supported by the record. See *Fahy; Commonwealth v. Guest,* 500 Pa. 393, 456 A.2d 1345 (1983). Since the record supports the trial court's finding based upon the Commonwealth's version of the interrogation which was accepted as credible by the suppression court, we must affirm the denial of the suppression motion. Appellant's contrary argument must be rejected.

■ Appellant also asserts that the suppression court erred in not quashing the indictments against him because the affiant listed in the warrant, Detective Ernest Bethea, did not have first-hand knowledge of the truth of the facts which made up the affidavit supporting the claim of probable cause for the arrest of Appellant. This allegation is made in a vacuum, without supporting argument or authorities.

Detective Bethea testified that the affidavit was comprised of the results of the investigation conducted by his colleague, Detective Michael Bittenbender, whose investigation and findings he found to be accurate and truthful and which formed the basis of the affidavit attested to by him.

There is no requirement that an affidavit be attested to by an eyewitness or only by one having first-hand knowledge of facts. As long as the affiant is satisfied that the information contained in the affidavit is true and accurate, he may so swear and the warrant based thereon will be recognized as valid. See, *Commonwealth v. Sudler*, 496 Pa. 295, 436 A.2d 1376 (1981); *Commonwealth v. Roach*, 444 Pa. 368, 282 A.2d 382 (1971). The suppression court correctly ruled that the warrant was properly issued.

█ Appellant also argues that he was denied a fair trial because his case was decided by a death qualified jury. This argument has consistently been rejected, as it must be now. *Commonwealth v. Edwards*, 521 Pa. 134, 555 A.2d 818 (1989); *Commonwealth v. Smith*, 511 Pa. 343, 513 A.2d 1371 (1986); *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985). Not only does Appellant fail to identify any of the potential jurors who were unlawfully excluded, but he also fails to explain why he believes that the death qualifying-process results in the court impaneling an unfair and prosecution-prone jury. Since there is no indication that the jurors chosen in this case were prosecution-prone, Appellant's challenge must be dismissed.

## TRIAL COURT ERRORS

We next address the allegations of error claimed to have been committed by the trial court and prosecutor during the trial.

█ First, Appellant claims that he was prejudiced when evidence of the stereo system and other items he removed from the victim's apartment were admitted into evidence during the trial because they tended to show that he was guilty of another crime, that of theft. It is well established that evidence of other crimes is admissible, under special circumstances, where it is relevant for some other legitimate purpose and not merely to show a defendant's propensity for committing crimes. *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985). Evidence of other crimes

may be introduced to prove: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987).

■ The trial court noted that the introduction of the exhibits were helpful in establishing the identity of Appellant as the perpetrator and in showing that this crime was part of the same transaction as the murders, as enunciated in the "res gestae" exception. We agree as we recently set forth in *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835 (1989). The fact that these items were found by the police in Appellant's brother's home corroborates both the testimony of the victim's brother, who indicated that his sister's stereo was missing, and Appellant's brother's testimony, which indicated that Appellant went back to the victim's apartment after the deaths, to retrieve these items, which he then sold to his brother. Such evidence links Appellant to the events on trial and are a natural development of the facts and, as such, are admissible.

■ Appellant also argues that it was error for the trial court to permit his brother, Eugene, and sister-in-law, Irene Marshall, to testify against him under grants of immunity because, during cross-examination, Irene Marshall indicated that she thought that she could lose her children if she did not cooperate and Eugene Marshall indicated that he thought that he could be charged with a capital offense if he did not cooperate with the police. Appellant argues that this evidence establishes that the Marshalls were tainted witnesses and that they were so unreliable that they should not have been permitted to testify.

On direct and re-direct examination, both witnesses also testified that they had not been threatened in any way for their testimony, that their testimony was truthful and the jury was told that they were testifying under a grant of immunity. In effect, Appellant argues that the grant of immunity provided the motive for the Marshalls' testimony. While this is a legitimate argument arising from the evidence presented, it was equally legitimate to conclude that the grant of immunity inspired them to tell the whole truth. The trial court properly left the resolution of this question to the jury. *Commonwealth v. Smith*, 502 Pa. 600, 467 A.2d 1120 (1983).

Appellant next argues that he was prejudiced when the mother of Myndie McKoy (one of the victims) interrupted the proceedings with an emotional outburst against Appellant. He now argues that this outburst could only be cured by the grant of a mistrial. We disagree. The harm caused by such an outburst can be cured by an immediate curative instruction to the jury. *Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178 (1988). Here, the trial court immediately cautioned the jury that it should ignore the outburst and to decide the case exclusively on the evidence and not on emotion, sympathy or prejudice. Given the fact that the outburst was brief, occurred only once, and was followed by an immediate instruction to the jury, we are satisfied that any prejudice was diffused and that Appellant's fair trial was not threatened. The trial court did not abuse its discretion in refusing the motion for mistrial. *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985).

Appellant also argues that Mrs. McKoy should not have been permitted to testify as her testimony was cumulative. The trial court found her testimony to be admissible because it tended to establish the last time her daughter was seen alive, which consequently helped to establish when the murders were committed. The trial court also ruled the testimony to be admissible to establish Myndie's identity, since Mrs. McKoy identified her daughter's body for the police. Whether such testimony was cumulative was for

the trial court to determine, and we will not reverse that decision absent an abuse of discretion. None has been demonstrated here and Appellant's contrary assertions are rejected.

Finally, Appellant raises various instances of prosecutorial misconduct during the prosecutor's closing argument to the jury during the guilt phase. We have often stated that comments by a District Attorney do not constitute reversible error unless "the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). Keeping this standard in mind, the following appears to have occurred during the prosecutor's closing argument.

The prosecutor referred to Appellant's possession of the stolen items taken from the victims' apartment and linked the possession of these items as part of a circumstantial fact pattern pointing to defendant's guilt. Such an argument is proper because, as we have already indicated, evidence of other crimes is admissible where so closely linked to the crime at issue that proof of one tends to prove the other and identify the perpetrator. Counsel's remarks may contain fair deductions and legitimate inferences to be drawn from the evidence. *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988). Appellant next refers to the prosecutor's alluding to Jesus Christ in his closing. In speaking about Appellant's confession, the prosecutor noted that Appellant told the police that he would not have killed his victims, if Sharon hadn't been the person she was. "She just wanted to use me and take my money." The prosecutor answered Appellant's justification for killing three people as follows: "... isn't this like condemning a rich man for having made it when the robber takes it? Isn't it like condemning Socrates for his unswerving search for truth or isn't it like condemning Christ for the act of crucifixion?" Taken in context, this statement is

an ironic reply to Appellant's attempt, in his confession, to shift the blame to the victim for her death. We do not view the prosecutor's reference to these figures as anything other than rhetoric meant to dispel Appellant's attempt at self-justification. Such an argument does not create a fixed bias or hostility toward Appellant and therefore is not a ground for a new trial.

■■■ Appellant also objected to the prosecutor's use of the word "nightmare" in the following context: "All we want is first degree murder for if in your heart of hearts you can think or have a nightmare about what kind of person that could do this to three people, at different times using different methods, using different types of ties, different types of ligatures, the search and the watching of life go out of their body ...". It seems to us that the prosecutor was referring to the type of person that would commit such terrible crimes and we cannot say that the unavoidable effect of this isolated characterization was to prejudice the jury against the Appellant.

There was no question that the crimes were grizzly and that a prosecutor would refer to these facts during his closing and ask the jury to keep these facts in mind when it decided whether a verdict of murder of the first degree was appropriate. It was in this context that the prosecutor referred to the type of person that committed such acts and, because the reference is linked to the evidence presented in the case, we are satisfied that any reference to Appellant was not unduly prejudicial nor did it fix a bias or hostility against him that made it impossible for the jury to weigh the evidence objectively and render a true verdict. *Commonwealth v. D'Amato*, 514 Pa. 471, 526 A.2d 300 (1987); *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531 (1986). We detect no such prejudice here, especially where the trial court in its charge made sure to advise the jury to determine the guilt or innocence of the accused based on the evidence and not on any extraneous factors. Accordingly, we dismiss Appellant's allegations of trial errors.

## SENTENCING HEARING ERRORS

We first address Appellant's claim that a photograph taken of the victims' bodies was shown to the jury and that its prejudicial nature outweighed its probative value. As we have previously stated, a photograph that is not judged inflammatory is admissible if it is relevant and assists the jury in understanding the facts, but a gruesome or potentially inflammatory photograph is admissible only if the need for the evidence clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987); *Commonwealth v. Garcia*, 505 Pa. 304, 479 A.2d 473 (1984). We have examined the photograph shown to the jury and conclude that it is not inflammatory. It shows the bodies of the victims lying face down on the mattress with no discernable signs of decomposition and little evidence of injuries. The picture shows the manner in which the victims were tied up and the Commonwealth sought to establish as an aggravating circumstance that the deaths were committed by means of torture. The photograph was properly admitted for this purpose.

From our review of the record, it appears that various pictures of the apartment were also shown to the jury during the guilt phase, but these were clearly non-inflammatory and were introduced to assist the jury in understanding the facts. Again there was no error in admitting these photographs.

As indicated, one of the aggravating circumstances the Commonwealth sought to establish was that the murders were committed by means of torture. 42 Pa.C.S. Section 9711(d)(8) [3].

Appellant argues that insufficient evidence exists to establish this aggravating circumstance and that the trial court erred in charging on this circumstance. Appellant's

---

**3.** 42 Pa.C.S. § 9711(d)(8) provides as follows:
   (d) Aggravating Circumstances.—Aggravating circumstances shall be limited to the following:
   (8) The offense was committed by means of torture.

argument is moot since the jury did not find this aggravating circumstance. Any prejudice to Appellant, thus, was cured by the jury's finding. *Commonwealth v. Christy*, 511 Pa. 490, 515 A.2d 832 (1986).

■ Appellant also asserts that the prosecutor's closing argument to the jury during the penalty phase was prejudicial. Appellant claims that the argument consisted of personal remarks and opinions made to influence the jury's decision. We are reminded that at the penalty stage, a defendant stands convicted of murder and the Commonwealth is free to refer to this and to argue in favor of the death penalty. *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984); *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987).

■ We have reviewed the closing argument of the prosecutor and find it to be within permissible bounds. Even the prosecutor's closing reference to the Appellant as a systematic, brutal, calculating killer is a justifiable response to the defense argument that Appellant was less culpable due to mental deficiencies and even fails to reach the level of rhetoric found acceptable by us in *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986) (Reference to Prince of Darkness, the personification of evil, Iago, and Hitler were acceptable as examples of individuals whose horrible deeds are manifestations of evil and not the result of an exculpatory deficiency.)

We perceive no error in the prosecutor's comments and reject Appellant's contrary assertions.

Appellant's last argument centers around the sufficiency of the finding by the jury of aggravating circumstance five (42 Pa.C.S. Section 9711(d)) as to Karima Saunders. Aggravating circumstance five is established when evidence shows that: "The victim was a prosecution witness to a murder or other felony committed by the defendant and

was killed for the purpose of preventing his testimony against the defendant in any grand jury proceeding or criminal proceeding involving such offenses."

Appellant argues that it would have been impossible for two-year-old Karima to identify him or be a competent witness against him in any criminal proceeding and, accordingly, this aggravating circumstance should not have been found by the jury. While Appellant raises an interesting question, in view of our conclusion that the jury's finding of the presence of this aggravating circumstance cannot be sustained, it will be unnecessary to reach the issue as Appellant has framed it.

We have held that this aggravating circumstance requires a showing of a fully formed intent on the part of the defendant prior to the event to kill a potential witness and that this factor provides the animus upon which this particular aggravating circumstance rests. *Commonwealth v. Appel*, 517 Pa. 529, 539 A.2d 780 (1988). The evidence here cannot support such a finding as to little Karima. There was no direct or circumstantial evidence to establish the Appellant's intent at the time he murdered Karima. All that was presented was that in response to Karima's cries for her mother, Appellant killed her. This is insufficient to establish that Appellant intended to kill Karima for the purpose of eliminating her as a potential witness in a prosecution against her and the jury's finding as to this aggravating circumstance cannot stand.

The jury also found as an aggravating circumstance that the Appellant had been convicted of another offense at the time of the offense at issue, for which a life or death sentence was possible. 42 Pa.C.S. Section 9711(d)(10). Since the Appellant was convicted of multiple murders, the jury was entitled to use these convictions to establish this aggravating circumstance. *Commonwealth v. Moser*, 519 Pa. 441, 549 A.2d 76 (1988).

■ The jury also found two mitigating circumstances, but under the situation where we invalidate one aggravating circumstance leaving one intact, we are constrained to vacate the penalty of death and remand for a new sentencing hearing pursuant to our Death Penalty Statute. 42 Pa.C.S. Section 9711(h)(4)[4]. Accordingly, we affirm the verdict of guilt as to Karima's death and remand for a new sentencing hearing as to her case.

We also affirm the verdict of guilt as to Sharon's death and affirm the sentence of life imprisonment imposed on Appellant.

Concerning the death of Myndie McKoy, the jury found two aggravating circumstances; namely, that Myndie was a prosecution witness (Aggravating Circumstance 5, 42 Pa. C.S. Section 9711(d)(5)) and that Appellant had been convicted of another offense at the time of the offense at issue for which a life or death sentence was possible (Aggravating Circumstance 10, 42 Pa.C.S. Section 9711(d)(10)). We have reviewed the evidence submitted to the jury on these aggravating circumstances and conclude that the jury's findings are based on sufficient evidence.

■ As to aggravating circumstance five, there was evidence submitted to establish Appellant's intent at the time he murdered Myndie. Myndie pleaded to be spared in exchange for her silence. Killing her in spite of this offer could be used to establish Appellant's intent that he wanted to eliminate Myndie from being able to identify him in the future. As previously noted, since Appellant was convicted

**4.** 42 Pa.C.S. § 9711(h)(4) provides:

(4) If the Supreme Court determines that the death penalty must be vacated because none of the aggravating circumstances are supported by sufficient evidence or because the sentence of death is disproportionate to the penalty imposed in similar cases, then it shall remand for the imposition of a life imprisonment sentence. If the Supreme Court determines that the death penalty must be vacated for any other reason, it shall remand for a new sentencing hearing pursuant to subsections (a) through (g).

of multiple murders, the jury was entitled to use these convictions to establish aggravating circumstance ten.

In as much as the aggravating circumstances found by the jury are supported by substantial evidence and were found by the jury to outweigh any mitigating circumstances found by the jury, we affirm the verdict of guilt as to Myndie McKoy's death and the penalty of death imposed for that murder.

■ Finally, pursuant to our statutory obligation to review death cases to determine whether the imposed sentence of death is "excessive or disproportionate to the penalty imposed in similar cases," (42 Pa.C.S. Section 9711(h)(3)(iii)), we have conducted an evaluation of all convictions of murder of the first degree prosecuted under the Act of September 13, 1978, P.L. 756, No. 141, as amended, 42 Pa.C.S. Section 9711, aided by the comprehensive study prepared at our order by the Administrative Office of Pennsylvania Courts (AOPC). See, *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984) and Appendix attached thereto. That review reveals no excess or disproportionality in the sentence imposed in the case of Myndie McKoy compared to the sentence imposed in other first degree murder cases where the evidence supports the aggravating circumstances found here.[5]

The sentence of death imposed for the death of Karima Saunders is vacated and the matter is remanded to the Court of Common Pleas of Philadelphia for a new sentencing hearing.

The judgment of sentence imposed for the death of Sharon Saunders is affirmed.

NIX, C.J., concurs in the result.

5. The Prothonotary of the Eastern District is directed to transmit the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court for the death of Myndie McKoy to the Governor pursuant to 42 Pa.C.S. Section 9711(i).