670 A.2d 623

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Andre STEVENS, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1995.

Decided Jan. 18, 1996.

Wayne S. Lipecky, Beaver, for A. Stevens.

Theresa Ferris–Dukovich, Beaver, Robert A. Graci, Atty. Gen., Harrisburg, John Lee Brown, Beaver, for the Commonwealth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

Appellant, Andre Stevens, was convicted, following a non-jury trial, of two counts of first degree murder [1] and one count of possessing a firearm without a license [2]. At the penalty hearing, Appellant elected to proceed with a jury, which determined that he should be sentenced to death on both murder counts. As to both victims, the jury found as aggravating circumstances that the defendant knowingly created a grave risk of death to another person, 42 Pa.C.S. § 9711(d)(7), and that the defendant has been convicted of another murder, 42 Pa.C.S. § 9711(d)(11). As to one victim, Michael Love, the jury found a third aggravating circumstance, that the killing was committed by means of torture, 42 Pa.C.S. § 9711(d)(8). In both cases the jury found that the aggravating circumstances outweighed two mitigating circumstances: the defendant had no significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1), and he was under the influence of extreme mental and emotional disturbance, 42 Pa.C.S. § 9711(e)(2). Post-trial motions were filed, argued and denied. On September 26, 1994, Appellant was formally sentenced to death based on the sentencing jury's verdict and to a concurrent term of imprisonment of twelve to sixty months for the firearms violation. Direct appeal from the judgment of sentence was taken to this Court pursuant to 42 Pa.C.S. § 9711(h).

In cases where the capital sanction is imposed, we are obligated to independently examine the sufficiency of the evidence, even where the Appellant has not challenged the conviction on that ground. *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103

---

1. 18 Pa.C.S.A. § 2502(a).
2. 18 Pa.C.S.A. § 6106(a).

S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the factfinder could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986); *Commonwealth v. Syre,* 507 Pa. 299, 489 A.2d 1340 (1985), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987); and *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976).

The record reveals that on February 8, 1992, Appellant was in Armando's Bar seated at the end of the bar closest to the entrance. At approximately 1:00 a.m., Brenda Jo Stevens, Appellant's estranged wife, entered the establishment with friends, walked past Appellant and took a seat near the opposite end of the bar. Shortly thereafter, Stevens and Love, an acquaintance whom she had met a few months earlier, entered the crowded dance floor and began dancing.

When he saw them dancing together, Appellant left the bar and went to his car, which was parked across the street. There he retrieved a nine-millimeter semi-automatic pistol loaded with hollow point bullets. Appellant then returned to Armando's and made his way across the dance floor, cocking his gun as he proceeded. As Stevens and Love were leaving the dance floor in different directions, Appellant opened fire on them. He shot his estranged wife twice in the head. Appellant then turned toward Love and fired a series of shots into his body. After a brief pause, Appellant fired a final shot into Love's scrotum area and then calmly left the bar. Love remained in a state of consciousness while first aid was administered to him. However, he later died as a result of the multiple gunshot wounds.

Review of these facts leaves no doubt that the evidence was sufficient for the trier of fact to have determined that all of the elements of the crimes had been established beyond a reasonable doubt.

■ Appellant raises three issues for our consideration. The first issue is whether the trial court erred in denying Appellant's Motion for Change of Venue or Venire and Supplemental Motion for Change of Venue or Venire, thereby violating his rights under Article I, Section 9 of the Pennsylvania Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

■ In *Commonwealth v. Gorby,* 527 Pa. 98, 588 A.2d 902 (1991), we set forth the standard for reviewing a claim that the trial court erred in denying a request for change of venue:

The determination of whether to grant a change of venue rests within the sound discretion of the trial court whose decision thereon will not be disturbed on appeal absent an abuse of that discretion. *Commonwealth v. Buehl,* 510 Pa. 363, 508 A.2d 1167 (1986). In reviewing the trial court's decision, our inquiry must focus upon whether any juror formed a fixed opinion of the defendant's guilt or innocence as a result of the pre-trial publicity. *Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (1982). Pre-trial publicity will be deemed inherently prejudicial where the publicity is sensational, inflammatory, slanted towards conviction rather than factual and objective; revealed that the accused had a criminal record; referred to confessions, admissions or re-enactments of the crime by the accused; or derived from reports from the police and prosecuting officers. *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985). However, even if one of the elements exists, a change of venue will not be required where there has been sufficient time between publication and trial for the prejudice to dissipate. *Commonwealth v. Casper,* 481 Pa. 143, 392 A.2d 287 (1978).

*Id.* at 108, 588 A.2d at 906. In sum, a change of venue becomes necessary when a fair and impartial jury cannot be selected. This standard is equally applicable where the jury is to be impaneled solely for the penalty phase of a capital case.

The record reveals that the non-jury guilt phase of Appellant's trial commenced on April 19, 1993, and continued

through April 21, 1993. The following day, before voir dire began for the selection of a jury for the sentencing hearing, Appellant presented a Motion for Change of Venue or Venire which was accompanied by a packet of newspaper articles published during the guilt phase of the trial. The court, after reading the articles, found nothing within the articles to be inflammatory. Although the motion was denied, the trial court agreed to frame its voir dire questions in such a way as to determine if any prospective juror was predisposed to a penalty as a result of the pre-trial publicity. The panel chosen for voir dire was also instructed by the court to refrain from reading or listening to any news coverage of this case.

On Friday, April 23, 1993, when it became apparent that there was an insufficient number of prospective jurors in the first pool from which to select a jury, the court entered an order directing the Sheriff to summon thirty more people from the county at large over the weekend. The Sheriff carried out this order by serving summonses on county residents at the Beaver Valley Mall.

Appellant then filed a Supplemental Motion for Change of Venue or Venire on Monday, April 26, 1993, contending that the prospective jurors selected over the weekend at the mall were prejudiced by a newspaper story about the manner in which they were served. The article also contained facts about the trial. The trial court denied the supplemental motion.

Appellant identifies specific articles published in the *Beaver County Times* that he claims were inflammatory and prejudicial. The headline on April 21, 1993, stated that Appellant "informed the state police that he did the killings." The article went on to describe in detail the testimony of the Commonwealth witnesses to the murders. Additionally, the article referred to one of the victims, Mike Love, as an off-duty police officer.

The headline in the *Beaver County Times* on April 22, 1993, stated "Stevens verdict: Guilty of murder" and reiterated the details of the murders.

The final articles, which Appellant made a part of his Supplemental Motion for Change of Venue or Venire, appeared on the evening of Friday, April 23, 1993, and Sunday, April 25, 1993. The headline in the *Beaver County Times* on April 23, 1993, was "14 jurors to decide Stevens fate." The Sunday, April 25, 1993 headline read "Went to the mall Saturday? Surprise, you're a juror." According to Appellant, the article stated that the people who had been ordered to report to court on Monday, April 26, 1993, would be reporting for the express purpose of potential selection for the sentencing jury in this case.

Specifically, Appellant contends that there was an insufficient cooling off period between the publication of pervasive, inflammatory and inherently prejudicial articles in the *Beaver County Times* and the jury selection for the sentencing hearing. These articles, according to Appellant, were especially inflammatory and prejudicial because the sentencing jury was not impaneled for the guilt phase but was only to consider evidence of aggravating and mitigating factors in determining whether the death penalty was to be imposed.

The Commonwealth points out that Appellant raised no objection as to venue prior to the guilt phase of the trial and in fact requested a jury trial at the sentencing phase notwithstanding the trial publicity. It was not until just before voir dire began that Appellant presented his request for change of venue. Furthermore, the Commonwealth contends, the media coverage that reported the guilt phase of the trial was objective and based upon information that was already a part of the record. With respect to the Supplemental Motion for Change of Venue or Venire, the Commonwealth argues that the news coverage of the trial court's order summoning thirty more prospective jurors from the county at large only detailed the manner in which the prospective jurors were summoned. Finally, the Commonwealth argues that Appellant's claim is baseless because he did not exhaust his peremptory challenges.

We find that this news coverage was not inherently prejudicial because it was factual and objective. The jury could not

have formed a fixed opinion relative to Appellant's sentence as a result of this publicity. For this reason, the trial court did not abuse its discretion in denying Appellant's Motion for Change of Venue or Venire and Supplemental Motion for Change of Venue or Venire.

The second issue Appellant raises is whether the trial court erred in permitting evidence adduced at the non-jury guilt phase of his trial to be presented to the sentencing jury in violation of his Eighth Amendment rights under the United States Constitution and Article I, Sections 9 and 13 of the Pennsylvania Constitution. Appellant claims that the sentencing jury was impaneled to decide only the aggravating circumstances against him and the mitigating circumstances in his favor.

In *Commonwealth v. Marshall*, 537 Pa. 336, 643 A.2d 1070 (1994), we stated:

A capital sentencing hearing is not a sanitized proceeding limited only to evidence of aggravating circumstances. Rather, it must, by necessity, inform the jury of the history and natural development of the events and offenses with which Appellant is charged, as well as those of which he has been convicted, so that the jury may truly understand the nature of the offenses and Appellant's character. *Commonwealth v. Young*, 536 Pa. 57, 637 A.2d 1313 (1993); *Commonwealth v. Abu–Jamal*, 521 Pa. 188, 555 A.2d 846 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990); *Commonwealth v. Beasley*, 505 Pa. 279, 479 A.2d 460 (1984). The jury simply cannot perform its function in ignorance of the facts of the crime for which Appellant is being sentenced, or the crimes for which he has previously been convicted, to the extent those crimes may properly support the existence of an aggravating circumstance provided in Section 9711(d).

*Id.* at 343–344, 643 A.2d at 1074.

Appellant contends that the admission of evidence relevant solely to the determination of guilt was irrelevant to the determination of his sentence because he stipulated that he

was convicted of a double homicide. Appellant claims that the admission of photographs depicting the crime scene, including the victims' bodies, bloodstains and shell fragments, were inflammatory and prejudicial. The trial court also erred, Appellant argues, in admitting testimony regarding Love's status as an off-duty police officer. Finally, Appellant claims that the trial court erred in admitting into evidence the pathologist's testimony regarding his examination of the victims and his medical conclusions.

■ The Commonwealth's burden at the sentencing hearing was to prove the following aggravating circumstances beyond a reasonable doubt: (1) knowingly created a grave risk of death to another person, 42 Pa.C.S. § 9711(d)(7); (2) conviction of another murder, 42 Pa.C.S. § 9711(d)(11); and (3) torture, 42 Pa.C.S. § 9711(d)(8). In attempting to prove these aggravating circumstances, the Commonwealth must be permitted to present any and all additional evidence that may aid the jury in understanding the history and natural development of the events and offenses for which Appellant is being sentenced, provided the evidentiary value of such evidence clearly outweighs the likelihood of inflaming the minds and passions of the jury. *Commonwealth v. Marshall*, 537 Pa. at 344, 643 A.2d at 1075.

The admission of evidence as to the determination of Appellant's guilt and Love's status as an off-duty police officer assisted the jury's understanding of the circumstances surrounding the deaths of Stevens and Love. Similarly, the black and white photographs depicting the crime scene, the bodies of the victims, bloodstains and shell fragments provided the jury with insight into the nature of the offenses leading to Appellant's conviction. The pathologist's testimony was used in support of the aggravating circumstances of torture and creating a grave risk of death to others. This evidence clearly formed the history and natural development of the events for which Appellant was being sentenced, and we conclude that their evidentiary value clearly outweighed any likelihood of inflaming the minds and passions of the jury. Accordingly, we

hold that the trial court did not abuse its discretion in admitting this evidence.

■ Appellant's final issue is that there was insufficient evidence to support a jury finding of the aggravating circumstance that the offense of killing Love was committed by means of torture. Appellant contends that the separate specific intent to inflict pain or suffering was absent because the murders were committed in a matter of seconds and there was psychiatric evidence, which the jury found as a mitigating factor, that he was under the influence of extreme mental and emotional disturbance.

The Commonwealth contends that sufficient evidence to establish the aggravating circumstance of torture is found in the fact that Love received nine gunshot wounds, none of which, alone, were capable of causing his death. Furthermore, the final shot to Love's scrotum area was done with the intent to sexually maim him.

■ In reviewing the sufficiency of the evidence, it must be determined whether the evidence and all reasonable inferences deducible therefrom, viewed in the light most favorable to the verdict winner, are sufficient to establish all of the elements beyond a reasonable doubt. *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). It is well established that in order for the Commonwealth to prove the aggravating circumstance of torture beyond a reasonable doubt, it must be demonstrated that Appellant possessed an intent, separate from the intent to kill, to inflict a considerable amount of pain or suffering that was unnecessarily heinous, atrocious or cruel, manifesting exceptional depravity. *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367 (1991), *cert. denied*, 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991); *Commonwealth v. Caldwell*, 516 Pa. 441, 532 A.2d 813 (1987), reargument denied, 520 Pa. 69, 550 A.2d 785 (1988); and *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985).

The record reveals that after he shot Stevens twice in the head, Appellant turned to Love and began rapidly firing a

series of shots into Love's body. After a brief pause, Appellant fired a final shot into Love's scrotum area.

The Commonwealth also introduced testimony regarding the nature of the ammunition chosen by Appellant and the fact that hollow point bullets cause a great deal of damage to the victims. The pathologist, Dr. Smith, testified that Love was shot eight times and received nine wounds. Although the nine gunshot wounds caused Love's death, Dr. Smith testified that none of these wounds individually were capable of causing death and that several of the wounds were the result of Love's attempt to defend himself. It was also Dr. Smith's testimony that none of these wounds caused Love to lose consciousness and, as a result, he suffered a great deal of pain before he died in the hospital.

We conclude that the jury could infer the intent to inflict a considerable amount of pain and suffering from the number and placement of shots into Love's body, especially the final shot into Love's scrotum area, the type of ammunition chosen by the Appellant, and the fact that Love remained conscious for a long period of time before he died.

Our review of the record reveals that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. Further, the aggravating circumstances found by the jury in this case are all supported by the evidence in the record. Lastly, the information compiled by the Administrative Office of Pennsylvania Courts indicates that the sentence imposed in this case is not disproportionate to the sentence imposed in similar cases.

Judgment of sentence affirmed.[3]

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

---

3. The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor of Pennsylvania, 42 Pa.C.S. § 9711(i).