J-A01007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KYREE KHALIL ROYSTER | : | |
| | : | |
| Appellant | : | No. 2705 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 16, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001415-2017

BEFORE: BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED MAY 12, 2021**

Appellant, Kyree Khalil Royster, appeals from the judgment of sentence

of 21-42 years' incarceration, imposed following his conviction for sexual

offenses against a minor. After careful review, we affirm.

The trial court provided the following summary of the facts adduced at

Appellant's trial, as well as the procedural history of this case, as follows:

### A. Factual History

On or about December 2, 2016, [Appellant] performed oral sex
on, and received oral sex from, his thirteen[-]year[-]old cousin
("J.C.") in the Philadelphia home of family member, Lawrence
Curti[z] Ingram ("Uncle Curtiz").[1] J.C. did not immediately
disclose the sexual assault.[2] Then, in the early morning hours of
January 23, 2017, while asleep in his bedroom on the third floor
of the home he shared with his mother ("[A.D.]") and older sister
at 17 West Oak Street, in Norristown, Montgomery County,
Pennsylvania, J.C. was awakened by [Appellant's] stroking J.C.'s
penis.[3] Despite J.C.['s] repeatedly telling him to leave,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] refused, told J.C. he "needed this," and after performing oral sex on J.C., [Appellant] forced J.C. to perform oral sex on him by pushing J.C.'s head down to his penis. J.C. choked and began to cry as [Appellant] held his head down, and then J.C. used his hand to stroke [Appellant]'s penis until [Appellant] ejaculated.[4] [Appellant] then forced J.C. to insert J.C.'s penis into [Appellant]'s anus. When [Appellant] finished sexually assaulting J.C., [Appellant] dressed and left by climbing back out of the 3rd floor bedroom window through which he surreptitiously entered without permission earlier.[5]

[1] Born [in] 1994, [Appellant] is eight … years and two … months older than his cousin, J.C.[] **See** N.T., 5/29/19, at 99, 126-38, 167; N.T., 5/30/19, at 270; N.T., 8/16/19, at 53. To conceal [the] victim's identity, his initials are substituted for his name throughout the entirety of the notes of testimony herein cited.

[2] N.T., 5/29/19, at 126-38, 158, 201, 215-24.

[3] *Id.* at 102-65. J.C. was fourteen years old on January 23, 2017.

[4] *Id.* at 144.

[5] *Id.* at 138-46, 153-58, 224-31, … Ex. C-11 to C-17 (Photographs). [Appellant], who had been in the process of building a gazebo for [A.D.] (his aunt) [in the] winter of 2016-[]17, had used the ladder in her backyard to access J.C.'s third floor bedroom window.

Stunned, hating himself for not defending himself and crying, J.C. immediately showered, hitting himself, and pulling out chunks of his own hair as he struggled to come to terms with the reality of the attack.[6] Then, in the predawn darkness, J.C. woke his mother. Terrified and stuttering, he told his mother that [Appellant] "came at him again.''[7] [A.D.] immediately called [Appellant]…, whose cell phone pinged off of the cell towers within a mile of J.C.'s home, (refuting [Appellant]'s later alibi claim asserted before trial that he was in Skippack, Montgomery County.[8]) When he did not answer, she continued calling, but [Appellant] never answered.[9]

[6] N.T., 5/29/19, at 146.

[7] *Id.* at 210-12.

[8] [Appellant]'s Notice of Alibi, 10/20/17, at ¶ 2; N.T., 5/29/19, at 218; N.T., 5/31/19, at 245-62, at Ex. C-53 (Power Point of Cell Site Mapping) (Reflecting [Appellant]'s cell phone received several calls from [A.D.], starting at 4:10 am, and "hitting off of" and/or connecting to the cell site that covers the area of Selma Street and Stanbridge Street, contrary to his prior alibi defense. N.T., 8/6/18, at 16.

[9] N.T., 5/29/19, at 222.

The following day, the Norristown Police Department commenced its investigation after receiving [A.D.]'s report, and ultimately, less than a week before trial began, J.C. disclosed an additional incident in which [Appellant] sexually abused J.C. at his Uncle Curtiz's home in Philadelphia, Pennsylvania.[10] J.C. admitted initially withholding disclosure of those incidents out of concern he would no longer be permitted to visit his Uncle Curtiz, who[m] he views as a father figure and would visit every other weekend.[11] Thereafter, the Montgomery County District Attorney's Office obtained a **McPhail**[1] letter from the Philadelphia District Attorney's Office, enabling Montgomery County to prosecute [Appellant] for his above-referenced December 2016 sexual assault of J.C. in Philadelphia.[12]

[10] **Id.** at 118-68.

[11] **Id.** at 201, 215-24.

[12] **See** Commonwealth's Motion to Amend, 7/25/18, at ¶ 5, Ex. C-1 (**McPhail** letter).

[T]he above-described assaults were not the first occasion on which [Appellant] sexually assaulted his young cousin, J.C. When [Appellant] was himself a juvenile, he confessed and was adjudicated delinquent on one count of rape of a child (F1), incorporating four (4) instances of his anal rape of J.C., who was just six (6) and seven (7) years old at the time.[13] Furthermore, by virtue of his adjudication, and placement in juvenile detention, [Appellant] had no access to J.C. from May 11, 2010 to the end of March 2014.[14]

---

[1] **See Commonwealth v. McPhail**, 692 A.2d 139 (Pa. 1997) (plurality), *superseded by statute*, Act of June 28, 2002, P.L. 481, No. 81, § 1.

[13] N.T., 5/29/19, at 106-222.

[14] *Id.* at 117.

## B. Procedural History

The Commonwealth ultimately charged [Appellant] as follows[]: Count One (Burglary - Threaten to Commit Bodily Injury), Count Two (Statutory Sexual Assault - 11 years older), Count Three ([Involuntary Deviate Sexual Intercourse ("IDSI")] - Child Less Than 16 Years of Age), Count Four (IDSI - Child Less Than 16 Years of Age), Count Five (IDSI - Child Less Than 16 Years of Age), Count Six (Unlawful Contact or Communication with Minor), Count Seven (Unlawful Contact or Communication with Minor), Count Eight (Criminal Trespass[]), Count Nine (Corruption of Minors), Count Ten (Indecent Assault - Without Consent of Other), Count Eleven (Indecent Assault - Forcible Compulsion), and Count Twelve (Indecent Assault - Person Less Than 16 Years of Age).[2]

On September 29, 2017, the Commonwealth filed a Motion to Admit Evidence of [Appellant]'s Prior Bad Acts, to which [Appellant] responded by filing an Objection to Commonwealth's Prior Bad Acts Motion. On October 4, 2017, the Honorable Gary S. Silow heard argument on the Commonwealth's Motion, and granted the Motion, stating, "I am going to rule that the testimony is relevant, it is not unduly prejudic[ial], and I am going to permit that prior bad act to come in."[3] Thereafter, the matter was further litigated by defense motions to reconsider filed respectively on July 24, 2018, (denied by Order dated August 2, 2018) and May 17, 2019, denied by Order dated May 24, 2019, providing as follows:

> [I]t is ORDERED that the Motion is DENIED, in part, to the extent that the Commonwealth shall be permitted to introduce: testimony of minor victim, J.C.[,] regarding [Appellant]'s prior sexual abuse of J.C., as well as, [Appellant]'s admission and adjudication of delinquency for one count of rape of a child (F1), incorporating four (4)

_____

[2] *See* 18 Pa.C.S. §§ 3502(a)(1)(i), 3122.1(a)(2), 3123(a)(7), 6318(a)(1), 3503(a)(1)(ii), 6301(a)(1)(ii), 3126(a)(1), 3126(a)(2), 3126(a)(8), respectively.

[3] N.T., 10/4/17, at 33.

instances of his anal rape of J.C., introduced as certified copies of court records.

It is further ORDERED that disposition of the Motion as to: testimony of Detective David Mazza and/or former Detective Grozinski regarding the confession taken from [Appellant] on May 3, 2010, is RESERVED, until time of trial, for consideration by the [c]ourt of its potentially cumulative and/or excessive prejudicial nature. This Order does not address the admission of said evidence for impeachment purposes, a determination of which will be considered if and when the Commonwealth seeks admission for such purpose.

To the extent that the Commonwealth seeks to introduce any of the above-referenced evidence under the "lustful disposition" exception, and in response to its related Request for the [c]ourt to so instruct the jury, even assuming said evidence might be admissible thereunder, given the other potentially permissible bases for admission, including, but not limited to, *res gestae* and/or intent, the [c]ourt declines to so instruct the jury; the use of said instruction being unnecessary, and therefore, overly prejudicial.[1]

 [1] ***See*** Pa.R.E. 404(b)(2).

Thereafter, on May 17, 2019, [Appellant] filed a Motion to Dismiss Pursuant to [Pa.R.Crim.P.] 600. The Commonwealth filed its Answer thereto on May 21, 2019, and by Order dated May 24, 2019, after hearing and argument, the [c]ourt denied [Appellant]'s Motion to Dismiss.

[]On May 17, 2019, [Appellant] filed a Praecipe to Withdraw the Notice of Alibi Defense, previously asserted in October 2017, which the [c]ourt subsequently granted.[]

On May 28, 2019, [Appellant] proceeded to a four (4) day trial, wherein the Commonwealth proceeded on [Counts One, Three, Four, Five, and Nine]. At the conclusion of [trial,] the jury convicted him [of each of those offenses].

On August 16, 2019, the undersigned conducted a sentencing hearing at which the Commonwealth introduced [Appellant]'s juvenile records, and called [Appellant]'s Juvenile Probation Officer, Robert Smith, to testify.[26] [Appellant]'s older brother, Anthony Clay took the stand on behalf of [Appellant], and testified

that [Appellant,] who[m] he described as very intelligent, and caring, had a "fairly good" childhood until age ten[,] when he was sexually victimized by one of his cousins. Thereafter, [Appellant] declined to execute his right to allocution.[27]

> [26] N.T., 8/16/19, at 13-58; Exs. C-2 to C-14 (Juvenile Records).

> [27] N.T., 8/16/19, at 41.

At the hearing's conclusion, having previously reviewed [Appellant]'s Presentence Investigation (PSI) report, Probation and Parole Intervention Evaluation (PPI), and Sexual Offender Assessment, which determined that [Appellant] presented as having an above-average risk of reoffending, and based on its determination that the underlying incidents constituted three separate events, the [c]ourt imposed its sentence, as follows: Count One…, imprisonment for not less than four (4) years nor more than eight (8) years, to run concurrent to the sentence on Count Three; Count Three…, imprisonment for not less than six and one-half (6½) nor more than thirteen (13) years (to date from January 28, 2017); Count Four…, imprisonment for not less than seven (7) nor more than fourteen (14) years, to run consecutive to the sentence on Count Three; and Count Five…, imprisonment for not less than seven and one-half (7½) nor more than fifteen (15) years, to run consecutive to the sentence on Count Four. In sum, the [c]ourt sentenced [Appellant] to an aggregate of twenty-one (21) to forty-two (42) years of incarceration, in addition to a variety of conditions, including but not limited to, no contact with the victim.[29] Before remanding [Appellant], the [c]ourt specifically advised him as to both his post[-]sentence, and appellate rights, and confirmed that [Appellant] wished to proceed with the aid of appointed counsel.[30]

> [29] N.T., 8/16/19, at 46-51.

> [30] *Id.* at 51-53, Ex. D-1 (Post Sentence Procedures).

On September 10, 2019, [Appellant] timely filed a Notice of Appeal challenging the imposition of his sentence.

Trial Court Opinion ("TCO"), 4/13/20, at 1-6 (citations reformatted, some footnotes omitted).

Appellant filed a timely, court-ordered Pa.R.A.P. 1925(b) statement, and the trial court issued its Rule 1925(a) opinion on April 13, 2020. Appellant now presents the following questions for our review:

> 1. Did the trial court err in failing to grant Appellant's motion to dismiss the information pursuant to Rule 600…?
>
> 2. Did the trial court err in failing to grant a mistrial following an outburst in front of the jury from the complaining witness's mother, where she exited the witness stand and exclaimed at the Appellant that he needed to admit what he had done and the trial court failed to give a cautionary instruction until the following morning?
>
> 3. Did the trial court err in admitting prior bad acts evidence from an incident that occurred when [A]ppellant was a juvenile, six years prior to this offense?
>
> 4. Did the trial court err in admitting [a] statement Appellant gave to police in relation to the juvenile prior bad acts from six years prior to the charges leading to his conviction?
>
> 5. Did the trial court err in permitting the Commonwealth to amend the bills of information at the start of trial to include an incident which was disclosed less than one week prior to commencement of trial?

Appellant's Brief at 5 (unnecessary capitalization omitted).

## **Rule 600**

Appellant first claims that the trial court abused its discretion when it denied his motion to dismiss his prosecution pursuant to Rule 600, asserting that the Commonwealth did not act diligently in bringing his case to trial within 365 days. As our Supreme Court has explained:

> When reviewing a trial court's decision in a Rule 600 case, an appellate court will reverse only if the trial court abused its discretion. *See Commonwealth v. Selenski*, 994 A.2d 1083, 1087 (Pa. 2010). "An abuse of discretion is not merely an error

of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused." *Id.* (internal citation omitted). Our scope of review is limited to the record evidence from the Rule 600 hearing and the findings of the lower court, viewed in the light most favorable to the prevailing party. *See id.*

\*\*\*

We have explained that Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution of criminal cases. [*Id.*] at 1088; *Commonwealth v. Dixon*, 907 A.2d 468, 473 (Pa. 2006). To protect the defendant's speedy trial rights, Rule 600 ultimately provides for the dismissal of charges if the Commonwealth fails to bring the defendant to trial within 365 days of the filing of the complaint (the "mechanical run date"), subject to certain exclusions for delays attributable to the defendant. Pa.R.Crim.P. 600(A)(3), (G). Conversely, to protect society's right to effective prosecution prior to dismissal of charges, "[R]ule 600 requires the court to consider whether the [C]ommonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control." *Selenski*, 994 A.2d at 1088. If the Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control, "the motion to dismiss shall be denied." Pa.R.Crim.P. 600(G). The Commonwealth, however, has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. *See* [*Commonwealth v.*] *Browne*, 584 A.2d [902,] 908 [(Pa. 1990)]. As has been oft stated, "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Selenski*, 994 A.2d at 1089. "If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant." Pa.R.Crim.P. 600(G).

*Commonwealth v. Bradford*, 46 A.3d 693, 700–02 (Pa. 2012) (citations reformatted).

As this Court has previously elucidated:

- 8 -

[T]he courts of this Commonwealth employ three steps ... in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600(D). As we have explained, Rule 600 encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600 extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Commonwealth v. Armstrong*, 74 A.3d 228, 236 (Pa. Super. 2013) (cleaned up).

In dispute at the Rule 600 hearing was a continuance requested by Appellant due to the Commonwealth's late disclosure of evidence, just prior to the scheduled trial date. The period at issue accounts for 76 days from August 3, 2018 (the date Appellant requested the continuance), until October 18, 2018 (when Appellant's counsel subsequently sought leave to withdraw).

The crux of counsel's calculation dispute centered on Judge Tolliver's August 8, 2018 Order, granting [Appellant]'s August 3, 2018 Expedited Motion for Continuance, and attributing the resultant delay to [Appellant] upon agreement of the parties[.] Defense Counsel asserted that attributing that time against it was error, and that instead, the resultant delay should have been attributed to the Commonwealth, arguing that its continuance request was necessitated by the Commonwealth's late disclosures. In response, the Commonwealth emphasized that prior Defense Counsel had agreed both in advance of argument, via text message correspondence, and at the August 6, 2018 argument before Judge Tolliver, that any resultant delay would be

excludable. After consideration of the evidence, argument, and post[-]argument briefs presented by the parties, the [c]ourt ultimately determined that grounds necessary to overrule Judge Tolliver's August 8, 2018 Order, attributing the delay to the Defense, had not been substantiated. Ultimately, the record reflected sufficient excludable time so as to negate [Appellant]'s Rule 600 Motion. As such, [his] instant Rule 600 claim merits no relief.

TCO at 10.

Appellant requested the continuance on August 3, 2018, due to the Commonwealth's late-disclosure of cell phone tower evidence and a related expert report refuting Appellant's alibi, and a hearing was scheduled to address the matter, *inter alia*, on August 6, 2018. At that hearing, the Commonwealth stated:

The Commonwealth has no objection to defense request to a continuance[,] provided that that continuance be on [Appellant] and that the time you ruled excludable as a defense continuance, to the extent that it wouldn't affect the Commonwealth as it moves forward and the Commonwealth would not [be] barred under Rule 600.

The Commonwealth recognizes that it's up against the Rule 600 date and has been working to bring [Appellant] to trial in time. The additional evidence which defense wants time to review and to consider points of cross-examination or to consider their counter-expert, the Commonwealth thinks that it's perfectly reasonable that they would need additional time to do that.

N.T., 8/6/18, at 8-9.

Appellant argued that any delay due to his own request for a continuance should be attributed to the Commonwealth because of the Commonwealth's lack of diligence in seeking evidence to refute his alibi. **See** **id.** at 12-14. As noted by Judge Tolliver, Appellant provided his alibi notice

- 10 -

on October 20, 2017, and the Commonwealth did not seek a warrant to search Appellant's cell phone until July 26, 2018. *Id.* at 17-18. Appellant advised that the Commonwealth had his cellphone in its custody the entire time. *Id.* at 18.

Judge Tolliver initially indicated an intent to attribute the defense's continuance to the Commonwealth for Rule 600 purposes. *Id.* The Commonwealth then argued: "Your Honor, the Commonwealth would submit that the remedy would be … to consider how the evidence is going to come in at trial, not to bar effectively the Commonwealth from trying the case by forcing a continuance on the Commonwealth, because that's effectively what would happen." *Id.* at 19. The Commonwealth suggested that the court consider an alternative remedy, arguing that the court's "concerns regarding the defense's need to prepare for trial would be alleviated through other needs, other than a Commonwealth continuance through which the Commonwealth would be essentially barred from trying the case under Rule 600." *Id.* at 21.

Judge Tolliver understood this to mean that the Commonwealth was prepared to go to trial without the cell phone evidence or related expert reports, and asked defense counsel if Appellant wanted to proceed to trial. *See id.* at 42. Defense counsel answered: "Yes. As long as it also includes them not being able to use it on rebuttal. So completely excluded, we will proceed on Wednesday." *Id.* The Commonwealth responded:

Your Honor, first, the new information that was provided to defense … is the cell tower information. And that information is something that the Commonwealth would want to put on in its case[-]in[-]chief. But if defense is going to put up an alibi witness and we have evidence that directly refutes that, it should not be precluded from coming in on rebuttal.

Your Honor, there's even case law that suppressed statements by defendants can be brought in on rebuttal, because it would be fundamentally unfair to allow a witness to get on the stand and lie without any kind of ability to cross-examine them.

*Id.*

Defense counsel replied that Appellant was only ready to proceed to trial without a continuance if the Commonwealth was completely barred from using the cell phone evidence. *Id.* at 43-44. The Commonwealth retorted:

Your Honor, the cell tower data is something that if Your Honor decides it can only come in, in rebuttal is still entirely within the control of the defense on whether they want to put up an alibi witness. If they want to put up an alibi witness to say that he was with [Appellant] in Skippack and we have clear proof that he was not with [Appellant] in Skippack, it would be fundamentally unfair to bar … the Commonwealth from providing that evidence to the jury, especially given that there is no requirement that the Commonwealth provide [notice of] witnesses that [it calls] in rebuttal.

The Commonwealth has provided all discovery as it has been received. The Commonwealth absolutely acknowledges that it failed to do [an] investigation as quickly as it could have, that things were put off [until the] last minute [and] that they should not have been. However, the rules of discovery have not been violated with respect to any of that. And the defense cannot ask Your Honor and should not ask Your Honor to preclude information that is absolutely critical to rebut an alibi witness. That would essentially allow any alibi witness to get up and lie on the stand and say I was with [Appellant] in Skippack at 4:11 when that call came in, when the Commonwealth has clear and convincing evidence to the contrary. That would be fundamentally unfair to the Commonwealth, Your Honor.

- 12 -

*Id.* at 44-45.

Judge Tolliver then indicated that he was going to attribute the time to the defense for any continuance request, because he was not going to revisit his previous order permitting admission of the cell phone evidence and related expert testimony. *Id.* at 51. The court questioned both attorneys about their communications prior to the continuance motion. Defense counsel admitted that she had agreed with the prosecutor to have the continuance attributed to the defense. *Id.* at 56-57. Defense counsel argued, however, that she had only done so because the court had already ruled to admit the new evidence. *Id.* at 57-58. Ultimately, defense counsel requested a thirty-day continuance. *Id.* at 61.

On appeal, Appellant now argues that Judge Tolliver, and then the Rule 600 court, erred in attributing the defense's continuance to Appellant due to the Commonwealth's delay in seeking the warrant. Appellant further argues that this delay demonstrated a lack of due diligence, and he also asserts that the Commonwealth was not duly diligent with respect to several other discovery matters. The Commonwealth counters that, "in granting [Appellants]'s request for a continuance, it was reasonable for the trial court to charge him with the delay as it was his request, and because the Commonwealth proceeded without objecting to that request based on his prior agreement that the delay would be attributed to him." Commonwealth's Brief at 20. The Commonwealth further emphasizes that, "if any remedy was in

order, the court could consider an evidentiary remedy, rather than one that would jeopardize the entire case on speedy trial grounds." *Id.* at 19-20.

Under these circumstances, we agree with the Commonwealth. The Commonwealth admitted that its delay in seeking a warrant was inexcusable, however, the Commonwealth was prepared to go to trial without the cell phone evidence and experts, rather than run afoul of Rule 600. Exclusion of this evidence from the Commonwealth's case-in-chief was more than adequate to cure any lack of diligence. This was no small concession by the Commonwealth, as the cell phone evidence placed Appellant near J.C. at the time of one of the assaults, in addition to its relevance to disprove Appellant's alibi.

Further, we conclude that Appellant's insistence at the August 6, 2018 hearing, that the Commonwealth be completely precluded from presenting the cell phone evidence in rebuttal if Appellant were to present an alibi witness at trial, was not a reasonable request. "A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." *Commonwealth v. Nypaver*, 69 A.3d 708, 716 (Pa. Super. 2013). It would have been fundamentally unfair to the Commonwealth for the court to permit Appellant to present alibi witnesses without the Commonwealth's ability to offer the cell phone evidence in rebuttal. Consequently, we ascertain no abuse of discretion in the Rule 600 court's decision to stand by Judge Tolliver's prior ruling that the defense's continuance was excludable time under Rule 600.

> Appellant also
>
> avers that 495 days of non-excludable time accrued in this matter. However, even without the 76 days of time between the August 3, 2018 motion and October 18, 2018 Motion to Withdraw, 419 days of non-excludable time elapsed. Regardless of those 76 days at issue, the Commonwealth failed to bring Appellant to trial within 365 days.

Appellant's Brief at 16.

We conclude that this aspect of Appellant's argument is meritless. As noted by the Commonwealth, Appellant's non-excludable time calculation of 419 days differs from the trial court's calculation in that he

> indicates by notations on the timeline in his brief that the 67 days between the trial court's March 11, 2019[] order scheduling this matter for trial, and his May 17, 2019[] Rule 600 motion, should be attributed to the Commonwealth. [Appellants]'s Brief at 11.
>
> Tellingly, he made this latter argument before the trial court, but made no effort to support it. **See** N.T.[,] 5/17/19[,] at 47 ("I don't have much argument on this point. But I'm not conceding from March 11th of 2019 to today, May 17th of 2019[.]").

Commonwealth's Brief at 17.

The "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600." **Commonwealth v. Mills**, 162 A.3d 323, 325 (Pa. 2017). The 67 days at issue appear, on their face, to be a delay due to the trial court's scheduling, and Appellant provides no argument as to why such court delay should be considered non-excludable time attributable to the Commonwealth. Less those 67 days, the non-excludable time was 352 days.

- 15 -

Thus, we conclude that the trial court did not err in denying Appellant's motion to dismiss pursuant to Rule 600.

## Mistrial

Next, Appellant asserts that the trial court abused its discretion when it failed to declare a mistrial following an emotional outburst by the victim's mother, A.D., during her testimony. Appellant complains he was prejudiced by her behavior and, because it was not immediately cured by a cautionary instruction, that he was deprived of a fair trial. Initially, we note that whether to declare a mistrial is a decision which rests within the sound discretion of the trial court, whose exercise thereof will not be reversed absent an abuse of such discretion. *Commonwealth v. Pearson*, 685 A.2d 551, 554 (Pa. Super. 1996).

During the Commonwealth's direct examination of A.D., the following exchange occurred:

Q. Would [Appellant] know that he wasn't allowed to be in [J.C.]'s room alone with him?

A. Yes, he did.

Q. How would he know that?

A. [Appellant], you did it. Just say you did it. Come on. Why would you take me through this?

THE COURT: Ma'am, sit down, please.

THE WITNESSS: No. He did it. Just say you did it.

N.T., 5/29/19, at 248.

- 16 -

Immediately following this exchange, the trial court dismissed the jury for the day, without addressing A.D.'s emotional outburst. *Id.* After the jury left, Appellant's counsel moved for a mistrial, arguing:

> Given the level of her emotion, the -- I don't want to say threats, but yelling directly at my client and telling him that he needs to admit this, and things of that nature, unfairly prejudices him, and I don't think that we can really adequately give him the opportunity for a fair trial after an outburst of that magnitude, which isn't going to come down on the record, where [she] slams her arms down on the side of the witness stand and then starts to scream at my client.

*Id.* at 249. The trial court clarified for the record that: "[T]o describe it, she comes off of the witness stand in the middle of redirect examination. I think the record will reflect what she said, and she said it screaming and stormed out of the courtroom." *Id.* The Commonwealth admitted that A.D.'s outburst was inappropriate, but contended that the resulting prejudice could be cured by a jury instruction and, thus, that a mistrial was not warranted:

> Your Honor, what just happened was totally inappropriate. It was not elicited by the Commonwealth. As far as whether that's grounds for a mistrial, I would submit that it's not. I would request time to review any case law about what would be grounds for a mistrial. But while it [was] upsetting, inappropriate, and completely unnecessary, I don't think she said anything to the jury that the jury wouldn't be able to disregard and set aside. There was no information that was given to the jury that the jury shouldn't know. She didn't actually say anything, as far as giving information goes. She was totally inappropriate and out of line, and the Commonwealth had specifically instructed her not to do something like that.

*Id.* at 250-51.

- 17 -

In response to the arguments of counsel, the trial court tentatively agreed with the Commonwealth, stating:

> Her accusation and claim that you did it and you know that you did it, why don't you just admit it, coming from the mother of the alleged victim, I don't know that the jury is going to put any stock in that substantively. I think it certainly can be cured with a curative instruction. But I won't rule on the motion yet until you have had an opportunity to digest it yourselves, research it overnight. And I think we will reconvene tomorrow morning at 8:45, at which time we can discuss it.

*Id.* at 251.

The trial court then asked a detective (who had accompanied A.D. as she stormed out) if A.D. said anything that might have been overheard by the jury as it exited the court. The detective indicated that, as he "was trying to get her to be quiet and move her back[,]" A.D. was shouting that she "was putting on an act, and she was tired of putting on an act, she doesn't put on an act for anyone, no one; and that [Appellant] knows that he did this, and that she's sick of this and she doesn't want to go through this anymore." *Id.* at 255. The Commonwealth then argued that those additional comments by A.D. could be construed as undermining her credibility. *Id.* at 255-56.

The following morning, defense counsel argued, citing *Commonwealth v. Marshall*, 568 A.2d 590, 597 (Pa. 1989), that although A.D.'s outburst might have been cured by an immediate instruction,

> given the fact that we dismissed the jury after the outburst, and now it's been approximately sixteen hours or so since the outburst occurred, they went home, they had time to think about it. I would submit that[,] at this point in time, even the curative

instruction would not be sufficient to ameliorate the undue prejudice to [Appellant] and his ability to receive a fair trial.

N.T., 5/30/19, at 6.

Nevertheless, the trial court ultimately ruled that it would deny the mistrial and issue a curative instruction to the jury, and it would permit Appellant's counsel to draft the instruction. *Id.* at 7-8. The Commonwealth then offered that:

> The only thing I would also consider perhaps including is that[,] because she said something along the lines of "just confess," perhaps instructing the jury that [Appellant] has no obligation to do anything but remain silent prior to and after trial. I would defer to defense if that would be helpful to their strategy as far as dealing with this, but I want to bring that to the [c]ourt's attention as something that we might want to address in the curative instruction as well.

*Id.* at 8-9.

The court questioned each juror, separately, as to whether they had heard anything as A.D. left the courtroom, after they had been dismissed from the courtroom for the day. *Id.* at 29-43. Some of the jurors heard A.D. screaming, but none of the jurors who heard A.D. understood what she was saying.

> Ultimately, the court issued the following instruction to the jury:

> Well, as I told you during *voir dire* and otherwise, trials are dynamic events, and while we try to stick to schedules as best we can, oftentimes things happen that may change up our schedule a little bit. You've been witness to one of those dynamic events to some extent.

> So[,] we've been here all morning trying to deal with some issues outside of your hearing. We've done that at this point, and by virtue of our work, I want to give you some cautionary instructions with regard to a number of things.

- 19 -

So[,] let me first talk about [A.D.] Yesterday, before we finished for the day, you heard and saw an outburst from a witness, [A.D.]

That outburst, both her statements and her conduct, is not evidence in this case. I am instructing you to totally disregard anything and everything that [A.D.] did and stated during that outburst.

You are not to infer that she knows any facts or has any information beyond that about which she testified. And of course, you're to judge her credibility the same as any other witness.

I also want to re[-]enforce to you something that I've told you now a number of times, that [Appellant] is presumed innocent and has an absolute constitutional right to remain silent when accused of a crime and an absolute constitutional right not to testify in this trial if he so chooses, and you cannot make any adverse [inference] against [Appellant] for so doing.

*Id.* at 47-48.

On appeal, Appellant now argues that the "trial court's failure to give a prompt cautionary instruction for approximately seventeen hours prevented him from receiving a fair trial, due to the emotionally charged nature of the outburst and implication of his right to remain silent." Appellant's Brief at 20. We initially note that Appellant did not raise the matter of the outburst's potential impact on his right to remain silent in the lower court. Although the jury was instructed in that regard, it was the Commonwealth, not Appellant, who suggested the instruction as a cautionary measure. Moreover, Appellant did not specify that basis for his claim in his Rule 1925(b) statement. Consequently, the trial court did not address the matter in its Rule 1925(a) opinion. Accordingly, we conclude that Appellant waived this aspect of his claim. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a [Rule] 1925(b) statement will be deemed waived."); *see*

- 20 -

*also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

However, Appellant adequately preserved his claim that he was prejudiced by A.D.'s emotional outburst to the extent that it deprived him of a fair trial, and that no curative instruction could mitigate that prejudice due to the delay between the outburst and the responsive instruction. In that regard, the trial court defended its decision to deny a mistrial and, instead, issue a curative instruction, reasoning as follows:

> Contrary to [Appellant]'s contention that the window for remediating the accrued prejudice, and his reliance on … *Marshall*, the record reflects that the [c]ourt's immediate intervention, wherein it shifted the jury's attention from [A.D.]'s exit, instructing them that the day's proceedings had concluded, echoing its customary and familiar admonitions, all conveyed a sense of calm, and immediately deflated any perceived escalation; returning proceedings to [the] status quo.
>
> Our Pennsylvania Supreme Court upheld similarly timed prophylactic instructions in *Commonwealth v. Philistin*, 774 A.2d 741 (Pa. 2001), where, by virtue of the timing of the allegedly prejudicial outburst, the [c]ourt was constrained to deliver its cautionary instruction … the following day. More specifically, in upholding the trial court's mistrial denial, the Court opined that, "[g]iven the facts that the outburst occurred only once, that it was promptly brought under control by the trial court, and that a thorough curative instruction was given to the jury before the proceedings continued, we are satisfied that any potential prejudice was abated." *Id.* at 744….

TCO at 15-16.

In *Marshall*, a jury trial was interrupted by an emotional outburst toward the defendant by one of the victims. *Marshall*, 568 A.2d at 596. Our

- 21 -

Supreme Court held that the "harm caused by such an outburst can be cured by an immediate curative instruction to the jury[,]" further explaining that

> the trial court immediately cautioned the jury that it should ignore the outburst and to decide the case exclusively on the evidence and not on emotion, sympathy[,] or prejudice. Given the fact that the outburst was brief, occurred only once, and was followed by an immediate instruction to the jury, we are satisfied that any prejudice was diffused[,] and that [the a]ppellant's fair trial was not threatened.

*Id.*

In **Philistin**, "spectators in the courtroom cheered" when the defendant was convicted of first-degree murder in a capital case. **Philistin**, 774 A.2d at 743. Although the judge admonished the spectators, no instructions were given to the jury until the following day when the penalty phase began. **Id.** Philistin argued that the outburst resulted in prejudice that biased the jury toward the subsequently imposed death penalty. **Id.** Our Supreme Court rejected that claim, reasoning:

> It is asserted by [the] appellant that the trial court failed to provide any curative instruction to the jury after the outburst, and that jurors might therefore have been encouraged to impose a sentence of death. This assertion is simply false. The record reveals that a thorough curative instruction was given by the court before the penalty hearing commenced. The penalty stage proceedings did not begin until the day after the outburst occurred. As those proceedings were about to begin, the court strongly warned spectators that no further outbursts would be tolerated. The jury was then brought in and the court issued [a] … curative instruction[.] …
>
> Given the facts that the outburst occurred only once, that it was promptly brought under control by the trial court, and that a thorough curative instruction was given to the jury before the

proceedings continued, we are satisfied that any potential prejudice was abated.

***Id.*** at 743–44.

We agree with the trial court. A.D.'s emotional outburst was brief and, although the curative instruction was not issued until the following day, it was issued before any proceedings continued in Appellant's case, in accordance with ***Philistin***. While an immediate instruction would have been preferable, the nature and length of the outburst was not so shocking as to be incurable by instruction before the case continued. Moreover, the outburst was not elicited or exploited by the Commonwealth. In these circumstances, we conclude that any resulting prejudice was adequately addressed by the curative instruction, noting that the "law presumes that the jury will follow the instructions of the court." ***Commonwealth v. Brown***, 786 A.2d 961, 971 (Pa. 2001).

Appellant argues that ***Philistin*** is distinguishable because the jury had already rendered a verdict in that case at the time of the outburst. Appellant's Brief at 20. We disagree. The jury in ***Philistin*** was still empaneled and had yet to decide the defendant's fate during the penalty phase of that trial at the time of the outburst. Appellant also asserts that the judge immediately admonished the spectators in ***Philistin***, whereas here, the judge dismissed the jury for the day without specifically addressing the outburst. ***Id.*** However, the critical issue here is not whether the spectators were admonished promptly, but the timing of the curative instruction to the jury. In that regard, ***Philistin*** is directly analogous to the circumstances in this

- 23 -

case. In both instances, the jury was given a curative instruction before the proceedings continued.

Accordingly, we conclude that the trial court did not abuse its discretion in denying a mistrial based on A.D.'s emotional outburst.

## Prior Bad Acts Evidence

Appellant's third and fourth issues concern the admission of prior bad acts ("PBA") evidence at his trial, and so we will address those claims together. Specifically, Appellant argues that the trial court abused its discretion by admitting evidence of Appellant's juvenile adjudication for raping J.C. (Issue 3), and related evidence of his confession to committing that offense (Issue 4).

> When reviewing a claim concerning the admissibility of evidence, and specifically evidence of other crimes or bad acts by a defendant, we note:
>
> > The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.
>
> An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Further, an abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted

- 24 -

against its potential for prejudicing the defendant. When a trial court indicates its reason for its ruling, our scope of review is limited to an examination of that stated reason.

*Commonwealth v. Weakley*, 972 A.2d 1182, 1188–89 (Pa. Super. 2009)

(cleaned up). Furthermore,

> evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009).

Here, there was extensive litigation of the at-issue PBA evidence, but most pertinent to our discussion begins with the Commonwealth's filing of a motion *in limine* seeking a pre-trial ruling on the admission of PBA evidence on March 11, 2019, arguing:

> The Commonwealth seeks to introduce certain evidence of [Appellant]'s prior sexual abuse of J.C., including the details of [Appellant]'s prior abuse, [his] confession, J.C.'s disclosure, and [Appellant]'s subsequent lack of access to J.C. for four years. This evidence is critical for the Commonwealth to show the full context of the crimes for which [Appellant] is currently charged, to show how [he] accomplished his current crimes, and to show how [Appellant] manipulated J.C. into compliance and silence. Without the details of this abuse, if only a bare stipulation or explanation of [Appellant]'s prior sexual abuse of J.C. were admitted, it would be impossible for a jury to understand the environment in which [Appellant] perpetrated these crimes and lens through which J.C. experienced this abuse.

Commonwealth's Rule 404(b) Motion, 3/11/19, at 2-3. Appellant filed a motion objecting to the admission of the prior bad acts as unduly prejudicial and without exception under Rule 404(b), and the trial court held argument on the matter on May 17, 2019.

On May 24, 2019, the trial court issued an order denying Appellant's motion, and granting in part, and denying in part, the Commonwealth's motion. Specifically, the court decided as follows:

> [U]pon consideration of [Appellant]'s Motion To Reconsider Admission of Prior Bad Acts Evidence, the Commonwealth's objection thereto, and after argument, it is ORDERED that the Motion is DENIED, in part, to the extent that the Commonwealth shall be permitted to introduce: testimony of minor victim, J.C. regarding [Appellant]'s prior sexual abuse of J.C., as well as, [his] admission and adjudication of delinquency for one count of rape of a child (F1), incorporating four (4) instances of his anal rape of J.C., introduced as certified copies of court records.
>
> It is further ORDERED that disposition of the Motion as to: testimony of Detective David Mazza and/or former Detective Grozinski regarding the confession taken from [Appellant] on May 3, 2010, and/or the contents of [Appellant]'s confession taken on May 3, 2010, is RESERVED, until time of trial, for consideration by the [c]ourt of its potentially cumulative and/or excessively prejudicial nature. This Order does not address the admission of said evidence for impeachment purposes, a determination of which will be considered if and when the Commonwealth seeks admission for such purpose.
>
> To the extent that the Commonwealth seeks to introduce any of the above-referenced evidence under the "lustful disposition" exception, and in response to its related Request for the [c]ourt to so instruct the jury, even assuming said evidence might be admissible thereunder, given the other potentially permissible bases for admission, including, but not limited to, *res gestae* and/or intent, the [c]ourt declines to so instruct the jury; the use of said instruction being unnecessary, and therefore, overly prejudicial.

Order, 5/24/19, at 1-2. Thus, the court permitted the Commonwealth to introduce evidence of Appellant's prior rape of J.C., through J.C.'s testimony, as well as court records of Appellant's conviction for that offense, under the *res gestae* and intent exceptions to the prohibition on PBA evidence. However, it tentatively denied admission of Appellant's confession, while reserving judgment for trial as to whether evidence of the confession could be admitted for another purpose.

As to the admitted evidence, the trial court determined "that the probative value of the proffered *res gestae* evidence outweighed any alleged unfair prejudice to [Appellant]," and that "the record also reflects numerous prophylactic measures both taken and permitted by the [c]ourt to ensure the jury's proper use and reliance o[n] such evidence." TCO at 21. For instance, during *voir dire*, the court questioned each potential juror as follows:

> As I previously informed you, this matter involves charges of sex-related offenses. You're going to hear [that Appellant] admitted in juvenile court that, when he was a juvenile, he engage[d] in sexual intercourse with the complaining witness. I am going to instruct you later that you can consider this evidence for certain limited purposes, but you cannot use this information to say that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt. Is there anyone here who feels that the fact that [Appellant] previously admitted in court that when he was a juvenile he had illegal sexual contact with the complaining witness in 2010, that they cannot follow my instruction as I just summarized it for you, and fairly and impartially reach a verdict in this case?

TCO at 20 (quoting N.T., 5/28/19, at 4-5); ***see also*** N.T., 5/28/19, at 45-46 (reading the question to the remaining potential jurors during *voir dire*).

- 27 -

At trial, the Commonwealth moved to refresh J.C.'s recollection with Appellant's confession, and then sought to have it introduced outright when it determined that J.C. was having trouble recalling the prior abuse. As explained by the court at the time:[4]

> Okay. And I guess what's happening is, the assistant district attorney, in preparing the witness again, has determined that the victim has very little recollection, or not sufficient recollection, of some of the details of what happened when he was six or seven, which I think the Commonwealth would like to introduce in order to pursue their theory that even though four years intervened, there was grooming conduct.

N.T., 5/29/19, at 89.

The court ultimately allowed Appellant's confession to be admitted, after "the Commonwealth narrowed the scope of its request to focus on [Appellant]'s grooming behavior…." TCO at 23. The trial court explains:

> Ultimately, the [c]ourt ruled as follows as to the admission of [Appellant]'s 2010 confession:
>
>> The [c]ourt: With regard to the admission of [Appellant]'s prior confession for the juvenile incident, the 2010 incident, I have ruled that in my discretion, I believe given that the victim in this case was six and seven years old at the time of that prior assault, the fact that his memory was obviously not very good as to that prior assault is explainable and understandable by virtue of how young he was at the time.
>>
>> So[,] while I allowed that testimony to be introduced as a prior bad act and while I'm going to allow the Commonwealth to introduce the actual adjudication of [Appellant], conviction of [Appellant] as a juvenile back then, I am going to allow the Commonwealth to introduce [his] confession because I do think there are aspects of that

---

[4] The prior sidebar where the matter was raised by the Commonwealth was not transcribed.

confession that are highly probative of [Appellant]'s common scheme plan and some of the uniqueness of his actions with the victim.

Then, before the Commonwealth introduced Det. Grozinski's testimony, to preclude any prejudice to [Appellant] or misuse by the jury, the [c]ourt again cautioned the jury as follows to guide [its] evaluation of [Appellant]'s juvenile confession:

The [c]ourt: Now, you're about to also hear testimony from a detective involving the prior juvenile case back in 2010. And you've heard evidence that [Appellant] was guilty of improper conduct for which he is not on trial here. I'm of course speaking of the testimony to the effect that [Appellant] previously admitted and was adjudicated delinquent for one count of rape of a child incorporating four instance[s] of anal rape of [J.C.]. And you're now about to hear evidence of [Appellant]'s confession with regard to those events in 2010.

Thus[,] evidence is before you for a limited purpose. That is, if you find it credible, you may consider this evidence as proof of [Appellant]'s motive, intent, or common scheme or plan and for nothing else. It must not be considered by you in any way other than that purpose I just stated to you.

You must not regard this evidence as showing that [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

…

Thereafter, the [p]rosecutor examined Det. Grozinski at length about the detailed and voluntary statement [Appellant] made to him and Detective David Mazza … on May 3, 2010. In his confession, [Appellant] delineated in horrific detail the manner in which he had groomed, manipulated, and sexually abused his young cousin, J.C.; and significantly, in a strikingly similar pattern reflected in the instant allegations.

TCO at 24-25.

The trial court also notes that during the defense's closing argument, Appellant's counsel recast the record of Appellant's prior abuse of J.C. to undermine J.C.'s credibility. Defense counsel argued, *inter alia*:

- 29 -

Here's the question. In 2009 and 2010, at six and seven years old, [J. C.] told about the sexual abuse that he was suffering back when [Appellant] was 15 and 16 years old, back in 2009 and 2010. As a six-and-seven-year-old kid, he had the courage to get up there and to tell about it.  Not only do we have seven years between these two incidents that cast doubt on the fact that it doesn't show that there was motive or intent on the part of [Appellant] seven years later; but if you're going to sexually assault a child, why would you pick a child that had already told about the prior sexual assaults?  Why would you pick a child that is now older and stronger?  Why would you pick a child that you know can do the same thing again and put you back in the same legal troubles? It just doesn't make sense.

N.T., 5/31/19, at 59.

The trial court also issued further instructions regarding the PBA evidence before the jury retired to deliberate:

Now, as I previously instructed you during the trial, evidence that [Appellant] previously admitted and was adjudicated delinquent for one count of rape of a child, incorporating four instances of his anal rape of [J.C.], and evidence of [Appellant]'s confession, which you heard, with regard to those events in 2010, are before you for a limited purpose.  That is, if you find this evidence credible, you may consider it as proof of the complete story and/or of [Appellant]'s motive, intent, and common scheme or plan.  That evidence must not be considered by you in any other way other than the purpose I just stated.  You must not regard this evidence as showing that [Appellant] is a person of bad character or criminal tendencies, from which you might be inclined to infer guilt here.

N.T., 5/29/19, at 105-06.

In its Rule 1925(a) opinion, the trial court concluded:

In the final analysis, the proffered evidence[,] which aptly demonstrated the manner in which [Appellant] groomed and manipulated his young cousin to facilitate his continued sexual abuse of him[,] was properly admitted where J.C., by virtue of his age at the time, as well as the trauma suffered, was unable [to] convey the same. ***See Commonwealth v. Hicks***, 91 A.3d 47, 55 (Pa. 2014) ([n]oting that a fundamental precept of our criminal

- 30 -

jurisprudence is that the Commonwealth is entitled to prove its case by relevant evidence of its choosing[]). Likewise, the overarching similarities between [Appellant]'s prior sexual assault and the underlying crimes rendered the admission of [Appellant]'s prior bad acts necessary to convey both the full extent and context of the allegations at hand, as well as [Appellant]'s motive, opportunity, plan, and scheme for victimizing J.C. *See **Commonwealth v. Frank***, 577 A.2d 609, 616-18 [(Pa. Super. 1990)] (holding that trial court admission of evidence of defendant's prior sexual assault of children under the common plan or scheme exception was proper where the assaults possessed a high degree of similarity and the court issued cautionary instructions[]). Notwithstanding its proper admission of [Appellant]'s prior sexual assault, the [c]ourt's repeated cautionary instructions to the jury, emphasizing the limited purpose for which such evidence was admitted, negated any potential for unfair prejudice to [Appellant].

TCO at 27.

Appellant argues that none of the exceptions to Rule 404(b)'s ban on PBA evidence applied in the circumstances of this case, and that, in any event, the prejudicial impact of that evidence was greater than its probative value. First, he argues that his confession and prior juvenile record did not constitute evidence of his motive. "To be admissible under this exception, there must be a specific logical connection between the other act and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." ***Commonwealth v. Ross***, 57 A.3d 85, 100 (Pa. Super. 2012) (cleaned up). Appellant contends that:

In this instance, the government presented no evidence that the current charges - removed seven years from Appellant's prior assault of the complainant - caused him to sexually assault the complainant in this instance. The Commonwealth posited no theory of revenge for Appellant against the complainant. Nothing

in the record supports the supposition that the current charges in some way 'grew out of' or were caused by the 2009 to 2010 incidents.

Appellant's Brief at 23.

We disagree and ascertain no error with respect to the admission of the PBA evidence under the motive exception. J.C. testified that, when Appellant came into his room at Curtiz's house, he told J.C. that he "needed this," which J.C. understood to mean that Appellant "needed more sexual activities, what we did previous times." N.T., 5/29/19, at 131. During another assault, Appellant repeated to J.C. that he "needed it." *Id.* at 139.

This evidence suggests a motive, that being Appellant's desire to repeat the prior sexual abuse of J.C. due to sexual attraction to J.C. or some similar compulsion. As such, the prior assaults were relevant to show that motive, given greater context and meaning to Appellant's statements to J.C. while he was assaulting him. Thus, there was at least some logical connection between the crimes under consideration at trial, and the prior assaults tend to demonstrate Appellant's motive for assaulting J.C.

Moreover,

[i]n a case involving a challenge to the admission of evidence of a prior sexual act, this Court has stated:

In general, evidence of other wrongful conduct not charged in the information on which the defendant is being tried is inadmissible at trial except in certain limited circumstances. One such exception arises in the prosecution of sexual offenses. Evidence of prior sexual relations between defendant and his or her victim is admissible to show a passion or propensity for illicit sexual relations with the victim. This exception is limited, however. The evidence is admissible only when the prior act involves the same victim

and the two acts are sufficiently connected to suggest a continuing course of conduct. The admissibility of the evidence is not affected by the fact that the prior incidents occurred outside of the statute of limitations.

*Commonwealth v. Knowles*, 637 A.2d 331, 333 (Pa. Super. 1994)…. This "lustful disposition" exception to the general rule against the admission of evidence of prior or subsequent bad acts has been consistently recognized by our Supreme Court for more than a century. *See*, *e.g.*, *Commonwealth v. Bell*, 31 A. 123 (Pa. 1895) (stating "in prosecutions for adultery or for illicit sexual intercourse of any class, evidence is admissible of sexual acts between the parties prior to, or when indicating continuousness of illicit relations, even subsequent to the act specifically under trial") (emphasis added and quotation omitted); *Commonwealth v. Snyder*, 870 A.2d 336, 343–44 (Pa. Super. 2005) (allowing admission of sexually explicit photograph of minor victim as relevant to show a passion or propensity for illicit sexual misconduct by the appellant towards victim); *Commonwealth v. Dunkle*, 602 A.2d 830, 839 (Pa. 1992) (determining that evidence of prior sexual misconduct is admissible if it shows a passion or propensity for illicit sexual relations of the defendant towards the victim).

*Commonwealth v Wattley*, 880 A.2d 682, 686–87 (Pa. Super. 2005) (footnote omitted, some citations reformatted, emphasis omitted).

Here, the PBA evidence fits squarely within the "lustful disposition" exception which, perhaps, might be considered a specific subcategory of motive and/or *res gestae* evidence. The evidence of Appellant's prior sexual assault of J.C. clearly demonstrated "passion or propensity for illicit sexual relations with the victim." *Knowles*, 637 A.2d at 333.

Because we conclude that the PBA evidence constituted motive and/or "lustful disposition" evidence under Rule 404(b)(2), we need not consider its admission for other purposes. Consequently, we now turn to consider whether

the "probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

There is no doubt that evidence of prior crimes, in the abstract, carries with it a risk of undue prejudice. Prevention and/or mitigation of such risk is the essence of Rule 404, which generally prohibits the use of character evidence, **see** Rule 404(a)(1), as well as evidence of prior bad acts to prove character, **see** Rule 404(b)(1). However, "the trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." **Commonwealth v. Paddy**, 800 A.2d 294, 308 (Pa. 2002) (cleaned up).

Here, we are satisfied the trial court's prophylactic efforts were sufficient to limit the risk of undue prejudice. The court issued several instructions to the jury as to the limited purpose for which the PBA evidence was admitted, and the jury is presumed to have followed the court's instructions. **Brown**, 786 A.2d at 971. The court also limited the admission of Appellant's confession to the prior conduct that J.C. could not recall in sufficient detail. Even before those measures were taken, the trial court used the *voir dire* process to exclude any jurors who believed they would be unable to follow the court's instructions regarding evidence of prior crimes against the victim by Appellant. Given these measures, we conclude that the trial court did not abuse its discretion by admitting the at-issue PBA evidence.

**Late Amendment to the Criminal Information**

Finally, Appellant asserts that the trial court abused its discretion by permitting the Commonwealth to amend the criminal information based on J.C.'s late disclosure of the sexual assault that occurred at Uncle Curtiz's home. We address such a claim pursuant to the following standards:

Pennsylvania Rule of Criminal Procedure 564 states:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as necessary in the interests of justice.

Pa.R.Crim.P. 564.

We have stated that the purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. ***Commonwealth v. Duda***, 831 A.2d 728, 732 (Pa. Super. 2003). The test to be applied is:

> [W]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

***Commonwealth v. Davalos***, 779 A.2d 1190, 1194 (Pa. Super. 2001) (citation omitted).

*Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa. Super. 2006) (footnote omitted).

Here, "the record reflects that the Commonwealth sought to amend the bills after J.C.'s testimony to permit that formal document to conform to both its previous pretrial disclosure, as well as the evidence produced at trial." TCO at 28. The trial court further explained:

Initially, less there be any insinuation of deliberate or tactical delay in the Commonwealth seeking to amend the Bills of Information to include an incident which was disclosed less than one week prior to commencement of trial, it is noted that Defense Counsel readily conceded during trial, and the record, likewise reflects, that the Commonwealth advised him (on May 23, 2019) via email, at the earliest possible opportunity of additional details regarding a 3rd incident of sexual abuse transpiring at Uncle Curtiz's home the same December 2016 weekend as already alleged, that had come to light during its witness preparation of J.C. More specifically, the amendment was sought by the Commonwealth after J.C.'s testimony, upon inquiry of the [c]ourt as to whether counsel needed to put any outstanding issues on the record before bringing back the jury.

The Commonwealth responded as follows:

The Prosecutor: Yes, Your Honor. At this time, Your Honor, the Commonwealth is moving to amend the bills of information, not to add any new additional charges or additional counts, but rather to specify that we are seeking to move forward on conduct that came to light while witness prep was ongoing. So the Commonwealth is seeking to amend the bills to specify that Count 3, Involuntary Deviate Sexual Intercourse with a Child, should refer to the first instance of sexual intercourse -- of oral sex between [Appellant] and the victim at the [U]ncle Curtiz's house. Count 4 should reflect the second instance of that Involuntary Deviate Sexual Intercourse at [U]ncle Curtiz's house in Philadelphia; that includes oral and anal sex. And then Count 5 would be to reflect the third instance at the victim's home…, including both oral and anal sex.

I would note that in the bills of information, there is alleged a course of conduct, with the course of conduct charge of Corruption of Minors. It's also alleged that these allegations occurred between Friday[,] the 2nd of December of 2016[,] and Monday, the 23rd of January of 2017, which was consistent with the time range the victim testified to about these incidents occurring. The bill also state that these occurred in both Montgomery County and Philadelphia, and that the Commonwealth learned this information during witness prep and disclosed it to defense counsel immediately upon learning it.

The [c]ourt: All right. Mr. Quigg.

Defense Counsel: Your Honor, we object to the Commonwealth's motion to amend the bills. Ms. Marvel -- this isn't alleged in discovery, by the way. Because as soon as she learned of it, she disclosed it to me. As is her duty, she supplied me with all of the discovery…. But last week, on May 23rd, Ms. Marvel sent me an email disclosing that there is a third incident that the complaining witness was alleging between himself and [Appellant]. That was the first time that the complaining witness had mentioned that to anybody, that there was [a] third incident. Before, it was[,] as charged[,] two incidents. In the criminal complaint, you have two incidents. At the preliminary hearing, he testified about two incidents. In all of the discovery that was provided, he discussed[,] up until the ongoing discovery provided last week from Ms. Marvel[,] everything related to two incidents between the two of them.

[N.T., 5/31/19, at 8-9.]

As the [c]ourt noted at the time [Appellant] asserted his objection, such amendments may be made at any time before the case goes to the jury to conform to the evidence presented at trial.

The [c]ourt: And I guess I should note that when you were notified of this incident, you elected still to proceed to trial and not seek a continuance. And I think that's probably because you perceived that it would come in either as a prior bad act or as another act that's being charged. And I take it that you made the decision that even though you learned of it late, you could prepare for it, and there would be no prejudice in that regard, in terms of your dealing with it. And as I recall, I guess, you cross-examined the victim on

- 37 -

the fact that he did not disclose that incident, either I guess in a Mission Kids statement or at the preliminary hearing. And[,] certainly[,] you can argue that to the jury as well.

So, given that I don't perceive[,] as I hear it[,] that the defense is prejudiced in any way, and certainly it's within the rubric of the allegations, even as the bill was filed, it covered a course of conduct between December and January. So[,] I'll grant the Commonwealth's motion, because I don't think it's really -- it's actually just adding particulars to the charges that have already been brought. So[,] I'll grant that motion. Your objection is noted.

The Prosecutor: Your Honor, I would just note, given that Your Honor has granted that motion, the Commonwealth is not going to proceed on Count 2, Statutory Sexual Assault.

The [c]ourt: Okay.  All right. Is there anything further before I bring the jury out?

Defense Counsel: No, Your Honor.

The Prosecutor: No, Your Honor.

[N.T., 5/31/19, at 10-11.]

\*\*\*

Contrary to [his] instant claim, [Appellant] suffered no cognizable prejudice.  In the first instance, the Commonwealth advised him as soon as it learned of additional details underlying the incident charged in Count Three (IDSI); as they emerged during its witness preparation.  At that point, despite the opportunity, [Appellant], sought no continuance from the [c]ourt; a strategic decision well within Defense Counsel's discretion.

Our Courts have repeatedly held that, so long as the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results. *See Commonwealth v. Roser*, 914 A.2d 447, 454 (Pa. Super. 2006); *see Sinclair*, *supra* ([holding that the trial c]ourt's grant of information amendment is appropriate [where] defendant was fully apprised of the factual scenario supporting the charges against him[]); *see* … *Menzer*, 18 A.3d at 1203 ([holding that d]efendant, who requested neither

- 38 -

a recess, nor a continuance, failed to demonstrate he suffered prejudice by virtue of Commonwealth's amendment after its case-in-chief[]).

In **Roser**, … the appellate court upheld the [trial c]ourt's ruling permitting the Commonwealth to amend its Bills requested immediately before closing arguments. **Roser**, 914 A.2d at 454; **see also**, **Commonwealth v. Watkins**, 361 A.2d 365, 659 (Pa. Super. 1976) ([holding] motion to amend bills at close of the Commonwealth's case was not prejudicial). Likewise, in this case, the [c]ourt appropriately determined that amendment was proper where the Commonwealth's request fairly fell within its prior allegations, providing particulars thereto; causing no prejudice to [Appellant].

Finally, the record reflects that Defense Counsel not only capably cross-examined J.C., as to [the] eleventh hour disclosure of the alleged third incident that precipitated the complained of amendment to the Bills, but he was, likewise, permitted to persuasively argue to the jury that J.C.'s last minute disclosure was a reasonable basis to find J.C. not credible:

> Defense Counsel: Talk about consistency. Think about the fact that [J.C.] has told different stories to different people every step of the way. Inventing an entirely new third incident, two and a half years after this happened. Two and a half years. Two and a half years goes by; and then, all of a sudden, there's this third incident, after going to Mission Kids and being interviewed by [a] trained forensic interviewer, after testifying at the preliminary hearing. Two and a half years later, there's this third incident that I never told you about.
>
> ***
>
> And then he doesn't stop there in terms of the incident at Uncle Curtiz's house. He completes [*sic*] a new incident where, in the man cave, he performs oral sex on [Appellant], and [Appellant] performs oral sex on him. Prior to one week ago, that had never been stated to anybody. Not -- this isn't even like the first incident where he invents new things that had happened; this is an entirely new encounter. Not in the Mission Kids interview, not at his preliminary hearing. Two and a half years later, invents a new act.

- 39 -

[N.T., 5/31/19, at 45, 53-54.]

Trial and its requisite witness preparation are unequivocally and naturally dynamic endeavors. In addition, as is frequently the case with juvenile victims, and conceivably so with those subject to abuse and/or trauma such as that supporting the instant allegations, the process of extracting a victim's recollection of events can trigger or uncover previously suppressed or withheld instances of abuse. To permit a defendant to benefit from the traumatic impact of their wrongdoings would be manifestly unreasonable. As such, our [c]ourts have held amendment reasonable so long as it relies upon the same basic elements and arose out of the same factual situation as the crimes previously charged; as a defendant [is] already thereby on notice and thus, no prejudice results. *See Roser*, *supra*. In this case, to deny the Commonwealth's motion to amend would have created … an untenable result by precluding it from presenting the jury with charges consistent with the evidence produced and/or dismissal of well-supported claims, all of which [Appellant] had ample general notice. As such, [Appellant]'s claim fails.

TCO at 28-32 (footnotes omitted, citations reformatted).

We must consider the following factors to determine if Appellant was prejudiced by the amendment:

(1) [W]hether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Commonwealth v. Mentzer*, 18 A.3d 1200, 1203 (Pa. Super. 2011) (citation omitted).

Appellant argues that

the Commonwealth amended the information to charge an entirely new event. Pa.R.Crim.P. 564. Evaluating these factors for

- 40 -

prejudice, Appellant was prejudiced by the Commonwealth's mid-trial amendment. The amendment changed the factual scenario in that the third count of … [IDSI] initially accounted for two different types of intercourse arising in the same incident. *See* Criminal Complaint. Given the late disclosure, Appellant was not afforded an opportunity to explore the allegations at the preliminary hearing. *See* N.T.[] Prelim. Hrg., 2/28/17. The attorney for the Commonwealth informed counsel of this additional information the week before trial. While Appellant had an opportunity to prepare for cross-examination, the complainant's late disclosure of this third occurrence limited any ability to impeach on any inconsistencies from his preliminary hearing testimony, thereby prejudicing Appellant.

Appellant's Brief at 30-31.

We address Appellant's claim under the six-factor test set forth in ***Mentzer***, although we do so slightly out of order for ease of disposition. As to the first factor, we agree with Appellant that the amendment changed the factual scenario underlying the original charges. While the new conduct fell within the timeline of the criminal information, and alleged similar conduct, it is undisputed that an additional incident was added to the factual basis of the charges. Consequently, under the third factor, this additional incident was not developed at the preliminary hearing. Under the fourth factor, however, we conclude that the description of the charges remained the same. No new charges were added to the criminal information, and Appellant was not subjected to any greater criminal penalty due to the amendment.

Regarding the second factor, Appellant was not surprised by the evidence of an additional incident, as he had been promptly notified by the Commonwealth of J.C.'s new allegation prior to trial and, notably, Appellant did not seek a continuance to prepare to face the new allegation. Under the

fifth factor, we must consider whether the amendment caused Appellant to alter his defense strategy. Appellant makes no specific argument to this effect, and we ascertain no change from the record. Defense counsel's strategy was to construe J.C.'s allegations as fabrications. This theory of the case did not change, and defense counsel even used the new allegation to support his argument that J.C.'s testimony was not credible. Finally, under the sixth factor, we must consider whether Appellant had sufficient notice and time to prepare. Again, Appellant was notified prior to trial of the new allegations. Appellant did not seek additional time to prepare, despite the opportunity to do so.

Balancing these factors, we conclude that Appellant has failed to convince us that he was prejudiced by the amendment to the criminal information to include the incident at Uncle Curtiz's house. While the factual basis of the criminal information was expanded, it did not result in additional charges, or exposure to greater criminal penalties, and it did not change the defense's strategy or theory of the case. And, although Appellant did not have the advantage of addressing the incident at the preliminary hearing, he had notice prior to trial of the new allegation, and took no action to seek additional time to prepare. Defense counsel was able to cross-examine J.C. about the incident, and then artfully wove the new disclosure into his argument that J.C.'s testimony was incredible. Accordingly, Appellant is not entitled to relief on this claim.

Judgment of sentence *affirmed*.

Judge Strassburger did not participate in the consideration or decision of this case.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 5/12/2021*